| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |

)
In re                                                                   )   Chapter 11
                                                                        )
TALT[1]                                                                 )   Case Nos. 05-10576-05-10601 (ALG)
(f.k.a. TOWER AUTOMOTIVE, INC., *et al*)    )   Jointly Administered
        Debtors,                  )
                                                                        )
                                                                        )
DEBRA THURMAN ATLAS,                           )    Adv. Pro. No. 10-02902 (ALG)
INDIVIDUALLY AND AS                              )
ADMINISTRATRIX OF THE ESTATE OF    )
WILLIAM ATLAS, DECEASED                     )
        Plaintiff,                )
        v.                          )
                                                                        )
CHRYSLER, LLC, TA DELAWARE, INC.,       )
TOWER AUTOMOTIVE, LLC AND                )
A.O. SMITH CORPORATION,                       )
        Defendants.              )
                                                                        )

**MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS A.O. SMITH CORP.'S THIRD-PARTY CLAIM**

A P P E A R A N C E S:

BURR & FORMAN LLP
Attorneys for A.O. Smith Corporation
3400 Wachovia Tower
420 North 20th Street
Birmingham, Alabama 35203
  By:   Michael Leo Hall

---

[1] The Debtors in these jointly administered proceedings are: Tower Automotive, Inc.; Algoods, USA, Inc.; R.J. Tower Corporation; Tower Automotive Bardstown, Inc.; Tower Automotive Bowling Green, LLC; Tower Automotive Chicago, LLC; Tower Automotive Finance, Inc.; Tower Automotive Granite City, LLC; Tower Automotive Granite City Services, LLC; Tower Automotive International, Inc.; Tower Automotive International Holdings, Inc.; Tower Automotive International Yorozu Holdings, Inc.; Tower Automotive Lansing, LLC; Tower Automotive Madison, LLC; Tower Automotive Michigan, LLC; Tower Automotive Milwaukee, LLC; Tower Automotive Plymouth, Inc.; Tower Automotive Products Company, Inc.; Tower Automotive Receivables Company, Inc.; Tower Automotive Services and Technology, LLC; Tower Automotive Technology, Inc.; Tower Automotive Technology Products, Inc.; Tower Automotive Tool, LLC; Tower Services, Inc.; and Trylon Corporation.

1

KIRKLAND & ELLIS LLP
Attorneys for Tower Automotive Post-Consummation Trust on behalf of certain Debtor entities
300 North LaSalle
Chicago, Illinois 60654
  By:  Ryan B. Bennett
       Michael A. Duffy

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is a motion of Tower Automotive Post-Consummation Trust ("Tower Trust") to dismiss a third-party claim brought by defendant A.O. Smith Corp. ("A.O. Smith").[2] The Tower Trust asserts in substance that the third-party claim is time-barred by virtue of the Tower chapter 11 proceedings, and that A.O. Smith should not be granted leave to file a late claim. For the reasons stated herein, the motion to dismiss is granted, and A.O. Smith's request to file a late proof of claim is denied, without prejudice to its rights to move for reconsideration under 11 U.S.C. § 502(j).

**Background**

*1. Procedural History*

      The lawsuit giving rise to A.O. Smith's third-party claim stems from a fatal automobile accident in Mississippi on June 10, 2006. (Am. Compl. ¶ 7) Debra Atlas (the "Plaintiff"), individually and as administratrix of the estate of her deceased husband, commenced the instant suit in Mississippi State court on January 7, 2009 (the "Civil Action"), asserting products liability, negligence, and breach of warranty claims against Chrysler, LLC ("Old Chrysler"), the manufacturer and designer of the 1994 Dodge pickup truck involved in the incident. (Am. Compl. ¶¶ 8-22) On April 2, 2009, the Plaintiff added A.O. Smith and two purported Tower

---

[2] A.O. Smith originally brought the action as a cross-claim since two Tower entities were then named defendants in the lawsuit brought against A.O. Smith. However, in its pleading, A.O. Smith indicated that if the Plaintiff dismissed her claims against the Tower defendants, A.O. Smith's action should be deemed a third-party claim. (Third-Party Claim 1-2) Since the Tower entities have been dismissed as defendants by the Plaintiff, the Court will treat and refer to A.O. Smith's claim as a third-party claim.

2

entities, TA Delaware, Inc. and Tower Automotive, LLC (the "Tower Defendants"), to the Civil Action, asserting breach of warranty claims against these entities on the premise that they were responsible for the manufacture and design of the truck's allegedly defective frame.[3] (Am. Compl. ¶ 23)

Old Chrysler filed a chapter 11 petition in this Court on April 30, 2009 (Case No. 09-50002-AJG), several months after the initial complaint was filed.[4] The Tower companies had filed chapter 11 petitions years before, on February 2, 2005, and the cases were still open. Relying on 28 U.S.C. § 1452, the bankruptcy removal statute, Old Chrysler and the Tower Defendants removed the Civil Action to the United States District Court for the Southern District of Mississippi. On or about May 12, 2009, A.O. Smith also filed a removal petition, as it expressed an intention to pursue (and has since pursued) cross-claims or third-party claims against Old Chrysler and the Tower Defendants. Also on May 12, 2009, A.O. Smith moved, among other things, to transfer the Civil Action to the locus of the Old Chrysler and Tower chapter 11 proceedings in New York. On December 8, 2009, after the Plaintiff had objected to removal and the venue transfer motions, the United States District Court for the Southern District of Mississippi denied a motion to remand, finding that there was at least "related to" bankruptcy jurisdiction under 28 U.S.C. § 1334(b). *Atlas v. Chrysler, LLC, et al.*, Civil Action No. 09-294-5 (S.D. Miss. Dec. 8, 2009) (Hon. Daniel P. Jordan III). The Mississippi District Court further held that 28 U.S.C. § 157(b)(5) applied, and ordered the claims against all defendants transferred to the Southern District of New York.[5] *Id.* at 4.

---

[3] As will appear below, A.O. Smith alleges that it was indemnified by one of the Tower Defendants for claims of the type asserted by the Plaintiff when one of the Tower Defendants bought its frame business under an Asset Purchase Agreement, dated January 28, 1997.

[4] The Chrysler cases are now known as *In re Old Carco LLC (f/k/a Chrysler LLC), et al.*

[5] 28 U.S.C. § 157(b)(5) provides that "The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."

3

After the Civil Action was transferred to the District Court for the Southern District of New York, the Tower Defendants moved to refer it to this Court, A.O. Smith sought to have it retained in the New York District Court, and the Plaintiff voiced a desire to return the case to the Southern District of Mississippi. Accepting the argument advanced by the Tower Defendants that the Civil Action was within this Court's "core" jurisdiction, the District Court referred the proceedings to this Court on March 12, 2010. *Atlas v. Chrysler, LLC, et al.*, Civil Action No. 10-00033 (S.D.N.Y. Mar. 12, 2010) (Hon. Colleen McMahon). However, in doing so, the District Court stated, "In the event that proceedings in the Bankruptcy Court or in this Court dispose of the action as against all except A.O. Smith, the Court will entertain (and grant) a motion to send the case back to Mississippi." *Id.*

Since the District Court Order was entered, proceedings in the Bankruptcy Court have disposed of the action brought by the Plaintiff against all the original defendants except A.O. Smith. On April 29, 2010, the Plaintiff filed a notice discontinuing with prejudice against the Tower Defendants, and on May 5, 2010, the Plaintiff similarly dismissed Old Chrysler as a defendant. Prior to these dismissals, however, on April 13, 2010, A.O. Smith sought for the first time to bring a claim against the Tower Defendants when it filed a pleading entitled "Cross-Claim (or in the Alternative, Third-Party Claim) Against TA Automotive, LLC."[6] (Third-Party Claim ¶ 20) A.O. Smith recognized that its claims were brought years after the bar date for filing claims against the Tower entities, but it asserted that its failure to act in a timely manner was the

---

[6] In naming TA Automotive, LLC, which does not exist, A.O. Smith appears to have combined the names of the two defendants originally named by the Plaintiff. As discussed below, A.O. Smith's claims are based on an agreement it entered into with Tower Automotive, Inc. and that it terms "Old Tower." The Court has assumed that Tower Automotive, Inc. is the intended defendant and real party in interest, and it is "Old Tower" for purposes of this decision.

4

result of "excusable neglect." (Third-Party Claim ¶ 15) Arguing that excusable neglect does not apply, Tower Trust filed its instant motion to dismiss on April 16, 2010.[7] (Mot. to Dismiss 3)

The genesis of A.O. Smith's third-party claim against Old Tower is not that Tower manufactured or designed any part of the 1994 truck involved in the underlying accident. The third-party claim is premised on an Asset Purchase Agreement between A.O. Smith and Tower Automotive, Inc. dated January 29, 1997 (the "Asset Purchase Agreement"), in which A.O. Smith sold to Old Tower its Automotive Products Company division. Section 1.4 of the Agreement provided for Old Tower's assumption of "all of the Liabilities of the Sellers to the extent relating to the Division, the Business or the Assets, whether arising before or after the Closing Date." (Asset Purchase Agreement § 1.4) A.O. Smith contends that this provision covers its potential liability to the Plaintiff. On the other hand, as A.O. Smith also acknowledges, Old Tower rejected the Agreement in its first amended joint plan of reorganization (the "Plan"), confirmed July 31, 2007. (Plan Art. VI, § B) In a notice of rejection filed on August 14, 2007, A.O. Smith was informed that it had until September 13, 2007 (the "Bar Date") to file a rejection damages claim, but it failed to do so. (Notice of Rejection and Bar Date 2)

## Discussion

A.O. Smith's ability to pursue an otherwise untimely rejection damages claim against Old Tower rests on its ability to file a late proof of claim and that, in turn, raises the question of whether it can establish excusable neglect under Bankruptcy Rule 9006(b)(1) for having failed to

---

[7] There have not been any similar proceedings in the *Chrysler* case. The bar date there was September 28, 2009, more than four months after A.O. Smith was brought into the Mississippi lawsuit and moved to transfer the proceedings to New York.

5

file a timely claim.[8] As the Supreme Court has held, a determination as to "excusable neglect" is ultimately an equitable one that takes into account all relevant circumstances, which include "[i] the danger of prejudice to the debtor, [ii] the length of the delay and its potential impact on judicial proceedings, [iii] the reason for the delay, including whether it was within the reasonable control of the movant, and [iv] whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The late claimant has the burden of proving that these factors establish excusable neglect. *See Midland Cogeneration Venture Ltd. P'ship v. Enron Corp.* (*In re Enron Corp.*), 419 F.3d 115, 121 (2d Cir. 2005). In the Second Circuit, which has taken a "hard line" in applying the *Pioneer* factors, this burden is difficult to meet, and "a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Enron*, 419 F.3d at 123, quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366-67 (2d Cir. 2003).

In the case at bar, there is no issue as to the good faith of all parties. As to the contested factors, the Court concludes that the one factor that tends to favor A.O. Smith—the reason for the delay—cannot outweigh the two factors that strongly support Old Tower—the prejudice to the debtor and the impact of the lengthy delay on the judicial proceedings.

I. Prejudice to the Debtor and Impact on Judicial Proceedings

At 31 months, the length of time between the Bar Date and A.O. Smith's eventual effort to pursue a claim against Old Tower is obviously considerable. More significant than the length of time is the stage at which A.O. Smith's claim was asserted, for "the lateness of a claim must be considered in the context of the proceeding as a whole." *Enron*, 419 F.3d at 128. In this case,

---

[8] Bankruptcy Rule 9006(b)(1) provides that "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion…on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect."

6

as Old Tower emphasizes, A.O. Smith's claim was first asserted years after the order confirming the Plan on July 12, 2007, and years after all prepetition claims had been administered in the chapter 11 cases. Once a bankruptcy case is confirmed, "it should be the objective of courts to cast off as quickly as possible all leading strings…" *In re General Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005), quoting *North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.,* 143 F.2d 938, 940 (2d Cir. 1944). Although the Second Circuit has not adopted a bright-line rule barring untimely claims brought after plan confirmation,[9] its wariness of bankruptcy courts' involvement in post-confirmation proceedings suggests the need for added caution in applying the excusable neglect doctrine to allow the filing of post-confirmation claims.

Such caution is particularly warranted in this case as the Old Tower bankruptcy proceedings are finally near completion. In contrast to the 85 actions that were still open at the end of 2007, only six adversary proceedings remained unresolved at the end of 2009. Additionally, as the number of open adversary proceedings has dramatically declined, disbursements to creditors have slowed to a trickle. In the quarter ending March 31, 2010, total disbursements from the Tower Trust amounted to less than $50,000, down from nearly $300,000 in the quarter ending December 31, 2009 and over $40,000,000 in the last two quarters of 2007. With this precipitous decline in Tower Trust disbursements signaling that the end is near, A.O. Smith's claim against Old Tower threatens to prolong the proceedings without affording the prospect of meaningful recovery to the claimant.[10] A bar date plays an "essential function" in

---

[9] Unlike this case, many cases commenting on the relevance of confirmation to the excusable neglect doctrine involve late claimants who filed untimely claims *before* confirmation. Although some courts have held that pre-plan late claims do not adversely impact judicial administration, the Second Circuit "do[es] not think that whether a claim is submitted before the date on which a reorganization plan is filed ought, ordinarily, to be conclusive." *Enron*, 419 F.3d at 129.

[10] Under the Plan, if A.O. Smith's rejection damages claim were allowed, A.O. Smith would become a Class 7 general unsecured creditor entitled to distributions only from the residual assets of the Tower Trust. (Plan Art. I, § B.45, Art. III, § B.7). Old Tower projected that the class of general unsecured creditors into which A.O. Smith would have fallen would receive a recovery of less than 0.1%. (Disclosure Statement 5) The record does not

bankruptcy proceedings. *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991). In this case, that function would be undermined by an order permitting A.O. Smith to file a claim at this late stage.

Yet, A.O. Smith contends that its claim is not prejudicial to either Old Tower or the judicial process precisely because it seeks only a portion of prospective distributions, however slight they may be. (Resp. 9) Although a claim on future disbursements is likely to be less burdensome than an attempt to claw back past distributions, there is a disruptive effect of even a *de minimis* prospective claim. As the Second Circuit concluded in rejecting a late claim that amounted to only 1/68,000 of the total value of claims filed in the Enron bankruptcy, the contention that an untimely filing should be allowed on account of its insignificant size is "unpersuasive because it ignores the arduous process of valuing assets, validating claims, and negotiating a compromise among a host of creditors." *Enron*, 419 F.3d at 119.

More important, A.O. Smith seeks not only a claim against Old Tower but maintenance of Old Tower as a third-party defendant in personal injury litigation that the District Court has stated should be returned to Mississippi now that A.O. Smith is the sole defendant. It would be enormously expensive and burdensome for Old Tower to participate in this lawsuit. These costs would far exceed the miniscule recovery that A.O. Smith could anticipate from a claim against Old Tower. It is also obvious that A.O. Smith, which has virtually no economic reason to retain Old Tower as a third-party defendant, should not be able to use Old Tower as a means of complicating a personal injury case or maintaining Federal jurisdiction.[11] *See In re Bradlees, Inc.* 2005 WL 106794, at *8 (S.D.N.Y. Jan. 19, 2005).

---

indicate that Old Tower's projection will prove materially low. Moreover, because A.O. Smith seeks only prospective distributions, A.O. Smith will likely fare even worse than other general unsecured creditors in Class 7.
[11] If the third-party claim against Old Tower were not dismissed, this Court would entertain a motion to sever the claim and stay it until *after* a determination of the personal injury claim against A.O. Smith. *See* F. R. Civ. P. 14(a),

8

II. Reason for the Delay

     A.O. Smith is on stronger ground in its contention that its failure to file a timely claim was beyond its control given its "complete lack of ... knowledge of the Atlas's claim and [the] claims that result therefrom" before the Bar Date. (Third-Party Claim ¶ 15) The Debtor also does not dispute A.O. Smith's contention that there were no incidents in the years preceding the Bar Date giving rise to similar claims. On the other hand, there is no dispute that A.O. Smith was given personal notice of the Bar Date, and it obviously made a decision not to file even a contingent claim for possible indemnification damages. Although on this record A.O. Smith has a valid reason for failing to file, it does not outweigh the other factors under all of the circumstances.

     Furthermore, any unfairness to A.O. Smith can be mitigated through the medium of § 502(j) of the Bankruptcy Code, providing that the allowance or disallowance of a claim can be "reconsidered for cause" and "allowed or disallowed according to the equities of the case." A.O. Smith states that it seeks only prospective participation in the bankruptcy distribution. If Plaintiff obtains a judgment against A.O. Smith and if these chapter 11 proceedings are still open, A.O. Smith can move for reconsideration of the disallowance of its proposed claim, if it is so advised, and the Court can then consider whether the equities entitle it to any relief based on the indemnification provisions of the 1997 Asset Purchase Agreement.

---

providing for severance or separate trial of a third-party claim; *In re Masterwear Corp.*, 241 B.R. 511, 521 (Bankr. S.D.N.Y. 1999) (declining to exercise jurisdiction but observing that defendants could subsequently bring indemnification claim in bankruptcy court if found liable in severed action outside of bankruptcy court). In any event, it is noteworthy that A.O. Smith contends that there is now Federal diversity jurisdiction between it and the Plaintiff. After becoming the sole direct defendant in the suit, A.O. Smith filed a notice claiming that federal diversity jurisdiction exists vis-à-vis the Plaintiff.

## Conclusion

For the reasons discussed above, Tower Trust's motion to dismiss is granted without prejudice to A.O. Smith's assertion of a renewed rejection damages claim in the event that it is found liable to the Plaintiff in the main proceeding, final distributions from the Tower Trust have yet to be made, and A.O. Smith seeks only a prospective share of future Trust distributions.

**IT IS SO ORDERED.**

Dated: New York, New York
July 13, 2010

*/s/ Allan L. Gropper*_____
UNITED STATES BANKRUPTCY JUDGE